Filed 3/14/24  Laverdure v. State of California CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| LOVIVE LAVERDURE, | B323593 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 18STCV04113) |
| v. | |
| STATE OF CALIFORNIA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ernest M. Hiroshige, Judge.  Affirmed.

Decker Law, James D. Decker and Griffin R. Schindler for Plaintiff and Appellant.

Holbrook, Montoya, Dadaian, Solares, DelRivo, Bowman, Berkebile, Matthew E. Campbell and Paul M. Dipietro for Defendant and Respondent.

———————————————

# INTRODUCTION

After he crashed his motorized scooter on the freeway, Lovive Laverdure sued the State of California and the California Department of Transportation (collectively, the State) under Government Code section 835 for maintaining uneven pavement that constituted a dangerous condition of public property.[1] Laverdure appeals from the judgment entered after a jury returned a verdict for the State, finding there was no dangerous condition. He argues the trial court erred in refusing to give his proposed special jury instruction that would have told the jury the absence of accidents at a crash site is not dispositive of whether a condition of property is dangerous. Because the trial court did not err in refusing to give the proposed instruction, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Laverdure Crashes on the Freeway and Sues the State*

On November 27, 2017 Laverdure was merging from an on-ramp into traffic on a freeway in Los Angeles. While traveling in an auxiliary lane on the right side of the freeway, Laverdure lost control of his Italian luxury motorized scooter (which the parties sometimes refer to as a motorcycle) and crashed.

Laverdure sued the State for premises liability and dangerous condition of public property. Laverdure alleged uneven pavement in his lane—for which there was no sign or other measure of traffic control to warn motorists—caused the

---

[1] Undesignated references are to the Government Code.

2

crash. Laverdure alleged he suffered injuries and property damage.

B. *The Jury Finds in Favor of the State*

The case proceeded to a jury trial. The State presented evidence about prior accidents, or rather the lack of them, at the site where Laverdure's crash occurred. Specifically, Kenneth Young, a civil engineer with the Department of Transportation, and Thomas Brannon, a former civil engineer with the Department, testified about a database the State maintains to track accidents on California highways. Young authenticated records from this database that showed there had been no accidents caused by uneven pavement at the site of the accident in the three years before Laverdure's accident. Both witnesses acknowledged the database and records showed only accidents that had been reported by the California Highway Patrol or submitted by public complaint, and Young conceded the evidence was in a sense "incomplete" because it did not contain unreported accidents such as Laverdure's.[2]

---

[2] Before trial, Laverdure moved in limine to exclude evidence about the lack of prior accidents at the crash site. During argument on the motion, counsel for Laverdure claimed this evidence was "inaccurate" because it did not include certain accidents, including Laverdure's, as well as a motorcycle crash that occurred a few weeks later. The trial court denied the motion, explaining the defense "may or may not believe it's accurate. But they're entitled to produce their—as parts of their defense to show they had no notice. But you are entitled to cross-examine about why these two accidents didn't show up in the same program. And it goes to the weight that the jury gives to

After 15 days of trial, the court instructed the jury on Laverdure's dangerous condition cause of action. The court instructed the jury with CACI No. 1100 that "Laverdure claims that he was harmed by a dangerous condition of [the State's] property. To establish this claim, plaintiff must prove all of the following: one, that the State . . . owned or controlled the property; two, that the property was in a dangerous condition at the time of the injury; three, that the dangerous condition created a reasonably foreseeable risk of the kind of injury that occurred; . . . four, that negligent or wrongful conduct of defendant's employees acting within the scope of their employment created the dangerous condition; or five, that the defendant had notice of the dangerous condition for a long enough time to have protected against it; six, that plaintiff was harmed; and seven, that the dangerous condition was a substantial factor in causing Plaintiff's harm."

The court also instructed the jury with CACI No. 1102 that "a dangerous condition is a condition of public property that creates a substantial risk of injury to members of the general public when the property is used with reasonable care and in a reasonably foreseeable manner. A condition that creates only a minor risk of injury is not a dangerous condition."

Laverdure asked the court to give a special jury instruction that stated: "Lack of accidents is not dispositive whether a condition of property is dangerous or that it compels a finding of non dangerousness absent other evidence. When an unreasonable risk of danger exists, the owner bears a duty

---

this part of the defense in this case." Laverdure does not challenge this ruling.

4

to protect against the first occurrence, and cannot withhold precautionary measures until after the danger has come to fruition in an injury-causing accident." The court refused to give the instruction because it was argumentative and taken from appellate opinions reviewing rulings on motions for summary judgment, not jury instructions.

In closing argument, counsel for Laverdure characterized the State's database and records of prior accidents at the crash site as "irrelevant to this case" because the evidence showed only reported accidents. In addition, counsel argued "the accident records have nothing to do with the fact we believe on the basis of the evidence that [the State] simply failed to maintain the auxiliary lane in a safe condition." Counsel for the State argued the lack of prior accidents showed there was no dangerous condition. In rebuttal, counsel for Laverdure again described the absence-of-accidents evidence as "[t]otally irrelevant" because it only included records of reported accidents.

The jury found there was no dangerous condition and returned a verdict for the State. Laverdure timely appealed from the ensuing judgment, arguing only the trial court erred in refusing to give his proposed special jury instruction.

## DISCUSSION

A.     *Applicable Law and Standard of Review*

"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.) "A court may refuse a proposed instruction that incorrectly states

the law or is argumentative, misleading, or incomplete." (*Caldera v. Department of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31, 44.) A court may also "refuse to give an instruction requested by a party when the legal point is covered adequately by the instructions that are given." (*Arato v. Avedon* (1993) 5 Cal.4th 1172, 1189, fn. 11.) A "trial court in a civil case has "'no duty to instruct on its own motion'" [citation] and no duty to revise incorrect instructions." (*Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.* (2021) 71 Cal.App.5th 528, 544.) We independently review the refusal to give a proposed instruction, "'"viewing the evidence in the light most favorable to the appellant."'" (*Ilczyszyn v. Southwest Airlines Co.* (2022) 80 Cal.App.5th 577, 608.)

B.     *The Trial Court Did Not Err in Refusing Laverdure's Proposed Special Jury Instruction*

Laverdure argues the trial court erred in refusing to give his proposed instruction because it constituted "a clear and accurate statement of the law" that was "copied almost verbatim" from published California cases. Whether a party copies or constructs an instruction, verbatim or otherwise, from an appellate opinion, however, is not the standard. "'"The admonition has been frequently stated that it is dangerous to frame an instruction upon isolated extracts from the opinions of the court."'" (*Bevis v. Terrace View Partners, LP* (2019) 33 Cal.App.5th 230, 254; see *Pantoja v. Anton* (2011) 198 Cal.App.4th 87, 130 [even an "accurate statement of the law" drawn directly from an appellate opinion can be "misleading" under the circumstances of a particular case]; *Sloan v. Stearns* (1955) 137 Cal.App.2d 289, 300 ["'it is a dangerous practice, and

6

one not to be followed, to take excerpts from opinions of the courts of last resort and indiscriminately change them into instructions to juries'"].) This is because "judicial opinions are not written as jury instructions, are notoriously unreliable as such, and may have a confusing effect upon a jury." (*Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 526.)

As discussed, Laverdure asked the court to give this instruction: "Lack of accidents is not dispositive whether a condition of property is dangerous or that it compels a finding of non dangerousness absent other evidence. When an unreasonable risk of danger exists, the owner bears a duty to protect against the first occurrence, and cannot withhold precautionary measures until after the danger has come to fruition in an injury-causing accident." Laverdure based this proposed instruction on language in *Lane v. City of Sacramento* (2010) 183 Cal.App.4th 1337 (*Lane*) and *Robison v. Six Flags Theme Parks Inc.* (1998) 64 Cal.App.4th 1294 (*Robison*). The first sentence of his proposed instruction was a modification of language in *Lane*, and the second sentence was directly from *Robison*. (See *Lane*, at p. 1346; *Robison*, at p. 1305.) The courts in *Lane* and *Robison*, however, did not review or propose language for jury instructions. The courts in both cases were reviewing orders granting motions for summary judgment based on an absence of prior accidents at the site where the accidents in those cases occurred. (*Lane*, at p. 1342; *Robison*, at p. 1297.)

In *Lane* the plaintiff's car struck a concrete center divider on a city street. (*Lane, supra*, 183 Cal.App.4th at p. 1339.) The city moved for summary judgment, arguing (among other things) the center divider was not a dangerous condition because there were no other similar accidents there in the previous seven years.

7

(*Id.* at pp. 1341, 1345.)  The court in *Lane* reversed an order granting the city's motion, concluding the city had not met its initial burden on summary judgment.  (*Id.* at p. 1344.)  The court stated the city's motion had several "fatal" flaws, including that, while "the absence of other similar accidents is 'relevant to the determination of whether a condition is dangerous,'" the city had cited "no authority for the proposition that the absence of other similar accidents is *dispositive* of whether a condition is dangerous, or that[3] it compels a finding of nondangerousness absent other evidence."  (*Id.* at p. 1346.)

But the *Lane* court's statement that the absence of similar accidents did not entitle the defendant to summary judgment does not mean it is proper to instruct a jury (as Laverdure asked the trial court to do) that a lack of accidents is not dispositive of whether property is dangerous or compels a finding that property is not dangerous absent other evidence.  The previous sentence in the court's opinion in *Lane*, which (for obvious reasons Laverdure did not ask the trial court to give (because it supported the State's case)) is that the absence of accidents is relevant.  Thus, the portion of the *Lane* opinion Laverdure relied on actually stated the lack of accidents was relevant, but not dispositive. Had Laverdure asked for that instruction, the court may have given it.  But the court did not err in refusing to give the instruction Laverdure did ask for.

The plaintiff in *Robison, supra*, 64 Cal.App.4th 1294 was injured at a picnic area of an amusement park when a runaway car from the parking lot crashed into the plaintiff's picnic table.

---

[3]   The unmatched "that" in Laverdure's proposed instruction comes from his failure to include the beginning of the sentence, which states the "city cites no authority for the proposition that."

(*Id.* at p. 1297.) The amusement park moved for summary judgment on the theory it did not have a duty to protect the plaintiff "from such an accident because the accident was unforeseeable, primarily because no similar incident had previously occurred." (*Id.* at p. 1296.) The court in *Robison* reversed an order granting the amusement part's motion, concluding that, "even though no similar incident had previously occurred, the danger was apparent in view of the configuration of the parking lot and picnic area" and that the park "thus had a duty to take reasonable measures to protect [the plaintiff] against such an accident notwithstanding the absence of prior similar incidents." (*Ibid.*) The court stated: "When an unreasonable risk of danger exists, the landowner bears a duty to protect against the first occurrence, and cannot withhold precautionary measures until after the danger has come to fruition in an injury-causing accident. [Citation.] Thus the lack of prior similar incidents was not a proper basis for summary judgment." (*Id.* at p. 1305.) The second sentence of Laverdure's proposed instruction was based on the first sentence of this portion of the opinion.

But *Robison*, like *Lane*, was a summary judgment case, where the court held the absence of similar accidents did not entitle the defendant to summary judgment. Indeed, in the second sentence of the excerpt of the *Robison* opinion, which Laverdure did not include in his proposed instruction, the court stated that the reason for the first sentence, which Laverdure asked the court to give, was to explain why the defendant was not entitled to summary judgment. Without that context, the language of Laverdure's instruction was misleading. (See *Solgaard v. Guy F. Atkinson Co.* (1971) 6 Cal.3d 361, 370 [court need not give a misleading instruction]; *Zannini v. Liker* (2022)

9

74 Cal.App.5th 610, 623 [same].) Moreover, the court in *Robison* was not considering whether a trial court should instruct a jury on when a landowner has a duty to protect a plaintiff from injury or when a landowner must take precautionary measures. *Robison* involved the issue of duty, which is a question of law for the court, not the jury. (See *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770; *Dix v. Live Nation Entertainment, Inc.* (2020) 56 Cal.App.5th 590, 605.)

Laverdure's proposed instruction was also misleading because it conflicted with other instructions the court gave the jury. For example, as stated, the trial court instructed the jury on the essential factual elements of Laverdure's dangerous condition cause of action with CACI No. 1100. The instruction included a statement Laverdure had to prove that "negligent or wrongful conduct of defendant's employees acting within the scope of their employment created the dangerous condition" or that "the defendant had notice of the dangerous condition for a long enough time to have protected against it." Had the trial court also given Laverdure's proposed instruction that the State had "a duty to protect against the first occurrence, and cannot withhold precautionary measures until after the danger has come to fruition in an injury-causing accident," the jury may have misunderstood or been confused about the elements Laverdure had to prove. CACI No. 1100, which tracks the language of section 835, does not say the State has a duty to protect against the first occurrence.

Nor is the language from *Robison* about "an unreasonable risk of danger" (*Robison*, *supra*, 64 Cal.App.4th at p. 1305) consistent with CACI No. 1102, which the trial court used to instruct the jury on the definition of a dangerous condition.

10

Rather than referring to "an unreasonable risk of danger," CACI No. 1102, which tracks the language of section 830, subdivision (a), defines a dangerous condition as one that "creates a substantial risk of injury to members of the general public when the property [or adjacent property] is used with reasonable care and in a reasonably foreseeable manner." Had the court given Laverdure's proposed instruction, the jury would have received different instructions on risk of danger and injury. (See *Olive v. General Nutrition Centers, Inc.* (2018) 30 Cal.App.5th 804, 814-815 [trial court properly refused a special instruction where the instruction was "unnecessary and misleading" and the CACI pattern instruction "adequately explained the applicable law"]; *Regalado v. Callaghan* (2016) 3 Cal.App.5th 582, 595 [trial court properly refused special instructions where the CACI pattern instruction adequately covered the applicable law and the special instructions, drawn from cases, "had the potential of misleading the jury and did not provide a clear statement of the law"]; *Joyce v. Simi Valley Unified School Dist.* (2003) 110 Cal.App.4th 292, 302 [trial court is "not required to give argumentative and conflicting instructions"]; Cal. Rules of Court, rule 2.1050(f) ["Use of the Judicial Council instructions is strongly encouraged."]; cf. *Henderson v. Harnischfeger Corp.* (1974) 12 Cal.3d 663, 671-672 [trial court erred in giving "contradictory and irreconcilable" instructions because the jury was "likely to be confused and misled by the conflicting statements"]; *Ruiz Nunez v. FCA US LLC* (2021) 61 Cal.App.5th 385, 396 [trial court erred in giving a special instruction that was incomplete, misleading, and did not comport with the law, rather than the applicable CACI pattern instruction].)

11

Laverdure argues his instruction "supplemented" and "clarifie[d]," not "supplanted" or "change[d]," the other jury instructions the trial court gave. Not necessarily. As discussed, the instruction may have misled or confused the jury about what elements Laverdure had to prove. But in any event, a court need not give a requested instruction "when the legal point is covered adequately by the instructions that are given." (*Arato v. Avedon*, *supra*, 5 Cal.4th at p. 1189, fn. 11; see *Jackson v. AEG Live, LLC* (2015) 233 Cal.App.4th 1156, 1187 ["The trial court's 'duty to instruct the jury is discharged if its instructions embrace all points of law necessary to a decision.'"].)

Finally, Laverdure's proposed instruction was argumentative. The instruction isolated a particular type of evidence and sought to minimize its potential effect by describing the evidence as "not dispositive." That was another reason for not giving the instruction. "'An instruction that goes too elaborately into the particular facts relied on by one of the parties is an argumentative instruction. *An instruction should state rules of law generally, rather than elaborate matters of evidence.* [Citation.] Any attempt to stress, overemphasize, or unduly make prominent selected portions of the evidence is in violation of the rule that instructions should not focus the jury's attention on particular items of evidence.'" (*Morgan v. J-M Manufacturing Co., Inc.* (2021) 60 Cal.App.5th 1078, 1088; see *Veronese v. Lucasfilm Ltd.* (2012) 212 Cal.App.4th 1, 24-26 [a proposed instruction that a particular concern is "'not a defense'" was potentially misleading because the concern was not irrelevant].) Laverdure argues emphasizing the evidence of prior accidents, as his proposed instruction did, was necessary to "temper" the "heavy influence" the State placed on the issue and evidence at

12

trial. But, as the trial court correctly ruled, "tempering" is something attorneys do in closing argument, not something courts do in giving jury instructions. (See *Ghezavat v. Harris* (2019) 40 Cal.App.5th 555, 558-559 [""'[i]nstructions should state rules of law in general terms and should not be calculated to amount to an argument to the jury in the guise of a statement of law"'"].)

## DISPOSITION

The judgment is affirmed. The State is to recover its costs on appeal.


SEGAL, Acting P. J.

We concur:



FEUER, J.



MARTINEZ, J.

13